## KOSIER v. STATE.

### Opinion delivered April 7, 1924.

1. INDICTMENT AND INFORMATION—STATUTORY OFFENSE.—An indictment for night-riding, under Crawford & Moses' Dig., § 2797, charging that accused "did unlawfully and feloniously deliver and repeat a verbal message purporting to come from an organized band or members thereof, which, in substance and nature, was intended to intimidate and threaten one M. W.," etc., being substantially in the language of the statute, was sufficient.

2. THREATS—CONVEYANCE OF INTIMIDATING MESSAGE.—Under Crawford & Moses' Dig., § 2797, declaring it a felony to deliver or repeat an intimidating or threatening verbal message to another, purporting to come from an organized band, a conviction may be had for the delivery of such a message from a band which has not been proved to have been organized for an unlawful purpose, if the message contained language which, in its common acceptation, was calculated to intimidate a person of ordinary intelligence and courage.

3. THREATS—SUFFICIENCY OF EVIDENCE.—In a prosecution for delivering an intimidating message from an organized band, in violation of Crawford & Moses' Digest, § 2797, evidence that defendant carried a verbal message from the Ku Klux Klan to the complaining witness, demanding that the latter "come clean" with defendant concerning the disagreement and separation of defendant's wife, was insufficient to sustain a conviction, in the absence of evidence that the Ku Klux Klan was an unlawful organization, and the message lacking the element of a threat.

Appeal from Little River Circuit Court; *B. E. Isbell,* Judge; reversed.

*Seth C. Reynolds,* for appellant.

The demurrer to the indictment should have been sustained. For law governing night-riding, see C. & M. Digest, §§ 2795-2798 inclusive. An indictment must be direct and certain in giving the particular circumstances of the offense charged, where they are necessary to con-

stitute a complete offense.   C. & M. Digest, § 3012.   And must charge the offense with such degree of certainty as to enable the court to pronounce judgment on conviction. *Id.,* § 3013.  It must state the acts constituting the offense in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended.   *Id.,* § 3028; 111 Ark. 214; 11 Ark. 180; 100 Ark. 409; 114 Ark. 38; 153 Fed. 1; 101 Pac. 599; 94 Pac. 419.   The exact question involved here has not been decided by this court; but, as supporting appellant's contention, see 140 Ark. 44; 154 Ark. 60.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock, Darden Moose* and *J. S. Abercrombie,* Assistants, for appellee.

The indictment is sufficient.   It follows substantially the language of the statute, C. & M. Digest, § 2797, in charging the offense, and that is all that is required.   71 Ark. 80; 72 Ark. 586; 107 Ark. 33 (syl. 1); 135 Ark. 243, 245; 136 Ark. 372; C. & M. Digest, § 3013; 114 Ark. 38; 156 Ark. 594.

HUMPHREYS, J.   Appellant was indicted, tried, and convicted of the crime of nightriding, in the circuit court of Little River County, and adjudged to serve one year in the State Penitentiary as punishment therefor.   Omitting the caption and signature of the prosecuting attorney, the indictment is as follows: "The grand jury of Little River County, in the name and by the authority of the State of Arkansas, accuse E. L. Kosier of the crime of nightriding committed as follows, to wit: The said E. L. Kosier, in the county and State aforesaid, on the 22d day of September, 1923, did unlawfully and feloniously deliver and repeat a verbal message, purporting to come from an organized band or members thereof, which, in its substance and nature, was intended to intimidate and threaten one Maloy Waddell, to whom said message was delivered, against the peace and dignity of the State of Arkansas."   A demurrer was filed to the indictment upon the ground that it did not state sufficient facts to charge appellant with the crime of nightriding.   The

court overruled the demurrer, to which ruling appellant objected and excepted.

Appellant contends for a reversal of the judgment because the court overruled the demurrer to the indictment. The indictment was drawn under the last clause of § 2797 of Crawford & Moses' Digest, which is as follows: "* * * or who shall deliver or repeat any verbal message purporting to come from any such organized band, or any member or members thereof, which, in its substance or nature, is intended to intimidate or threaten any person, shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary for a term of not less than one nor more than seven years."

It will be observed by reference to the indictment that it is couched in substantially the language of the statute. In charging statutory crime this is all that is necessary. *Wolfe* v. *State,* 107 Ark. 33; *Gramlich* v. *State,* 135 Ark. 243; *Wald* v. *State,* 136 Ark. 372; *State* v. *Western Union Tel. Co.,* 160 Ark. 444.

Appellant also contends for a reversal of the judgment upon the ground that the evidence is insufficient to make out a case under the statute. The statute upon which the indictment is founded is directed at any one who delivers or repeats a threatening or intimidating verbal message to another, purporting to come from two or more persons confederated or banded together for unlawful purposes, or which, by sending an intimidating or threatening message or letter, has become an unlawful organization or body of persons. The evident intent and purpose of the statute was to prevent any one from carrying threatening or intimidating messages from organizations or members thereof, confederated together in the first instance for unlawful purposes, or who have converted themselves into unlawful organizations by sending threatening or intimidating messages. In the case of a message or letter coming or purporting to come from a band or body of persons, which has not been proved to have been organized in the beginning for an unlawful purpose, a conviction could be had if it is

shown that the message or letter, or the purported message or letter, contained language which, in its common acceptation, was calculated to intimidate a person of ordinary intelligence and courage.

The record in the instant case reveals that E. L. Kosier, the appellant, who had had trouble with his wife, went to the home of Maloy Waddell and delivered the following message to him: "There were two cars of Ku Klux came to my house last night and gave me orders to come over here and make you come clean with me." The purpose of the message, according to the testimony of Maloy Waddell, was to obtain a written statement from him as to whether he (Waddell) or Mrs. Kosier was to blame for the disagreement and separation of Kosier and his wife.

The prosecuting attorney admitted, and the undisputed evidence showed, that the Ku Klux Klan was organized for lawful purposes. While the message which was delivered was in the nature of a demand, it contained no threat. A message of this character purporting to come from a band or organization confederated together for lawful purposes could not have the effect of intimidating a person. Intimidation is the gist of the offense, and there is an entire absence of proof tending to show that the Ku Klux Klan was organized for unlawful purposes, or that the purported message was in its nature threatening or intimidating. It was in the nature of a demand, but contained no threat or language implying punishment upon the failure to comply with it.

The court should have sustained appellant's demurrer to the testimony and instructed a verdict of not guilty.

On account of the court's refusal to do so, the judgment is reversed, and the cause dismissed.

The Chief Justice and Mr. Justice SMITH dissent.

SMITH, J., (dissenting). In my opinion the demurrer to this indictment should have been sustained. It is usually sufficient to charge a statutory offense in the language of the statute; but this is not always true, and is

not true where a more particular statement of facts is necessary to enable the accused to properly meet the accusation against him. *State* v. *Graham*, 38 Ark. 519; *Houpt* v. *State*, 100 Ark. 409; *State* v. *Scott*, 114 Ark. 38.

Here it was not sufficient to charge the offense in the language of § 2797, C. & M. Digest, because, as appears from the language of that section quoted in the majority opinion, the section itself is not complete, and a reference must be had to one or more of the preceding sections to ascertain what the phrase, "from any such organized band or any member or members thereof," means. One cannot read either the indictment itself or the section from which the language of the indictment is quoted and know what band is intended, or what message was delivered, or the purport thereof, and, in my opinion, the indictment is therefore demurrable.

The judgment of conviction was not reversed, however, because the indictment was bad. The majority hold it sufficient, and have reversed the judgment and dismissed the case because the testimony is not sufficient to support a conviction; and, as I do not concur in that view, I record myself as dissenting.

Any discussion of the purposes of the Ku Klux Klan would be beside the question. It may be true here that no message was sent by that organization, but the testimony shows, and the jury found, that appellant did deliver a message purporting to come from that organization, and the majority has found that this message was innocuous, and did not offend against the statute. The opinion of the majority is based upon this finding, and it is therefore the only question which need be discussed.

Here a man and his wife had separated, and the husband was being sued for a divorce and alimony, and he was defending upon the ground that his wife, and not himself, was to blame, and he sought to establish this fact by proving the written admission of Waddell to that effect. It is idle to argue the serious character of the admission which appellant sought to extort from Wad-

dell. The message was not an inquiry, and I am unable to discern what it lacked of being a threat. Two cars of men would be quite a party; and if this party of men had, in fact, organized to give orders in the night time, the jury might well have concluded that a message from such a source was calculated to intimidate.

Waddell told appellant, in effect, that no improper relation had ever existed between himself and appellant's wife, and that he had never been at appellant's home except when accompanied by his own wife. But this was not the answer desired. Appellant produced a book and told Waddell that he must "come clean," and that the Klan demanded that he write his answer, which would be delivered to the Klan at a meeting of its members to be held on the following Wednesday.

We think the jury was warranted in believing, and did in fact find, that here was a threat to enforce the "unwritten law," which some regard as high authority in certain cases, with the alternative to Waddell to blacken a woman's reputation, although Waddell had told her husband that the charge which connected his (Waddell's) name improperly with appellant's wife was untrue.

Is this a message to be waved aside as one not intended or calculated to convey a threat or to intimidate? The majority say yes, and assign as a reason for that answer that the prosecuting attorney admitted, and the undisputed evidence showed, that the Ku Klux Klan was organized for lawful purposes, and that a message of this character purporting to come from a band or organization confederated together for lawful purposes could not have the effect of intimidating a person.

It occurs to me that this conclusion is erroneous for two reasons. The first is that it was not essential to show that the Klan had in fact authorized such a message. As is well said by the majority, this statute is directed against intimidation, and the penalty of the statute is directed against one "who shall deliver or repeat any verbal message *purporting* to come from any such organized band." The statute does not require that it

should be shown that the threatening message actually came from an organized band. It is sufficient if the message delivered *purports* to come therefrom. The definition of the verb "purport" given in Webster's New International Dictionary is: "To have the appearance or convey the impression of being, meaning or signifying (some particular thing); to import; to mean or seem to mean or intend; often with an object clause or infinitive; as, the letter *purports* to be from the president; the letter *purports* to be in the interest of morality."

One cannot concoct a message calculated to intimidate another into an admission involving the serious consequences of the admission here demanded and excuse that wrongful act by showing either that he was unauthorized to carry such a message or that the organization from which the message purported to come was not primarily organized for the purpose of executing such a threat as was here communicated.

The second reason is that it matters not how beneficent the primary purpose of any organization may be, nor what the recitals of its constitution, its by-laws or its articles of association are. "By their fruits ye shall know them," and the lawful or unlawful character of any band is to be determined by its practices rather than by its professions. No organization, by any name, or without a name, may usurp the function of enforcing the law, either written or unwritten, and here was an order purporting to have been promulgated against a man who had been convicted without knowing that he had been accused. An organization might have the most laudable purpose in regard to the suppression of crime, but it must execute that purpose in a lawful manner by upholding and sustaining the agencies of the law, and not by usurping those functions and accomplishing that purpose in a manner which its members believe to be more effective than the more orderly, if less expeditious, processes thereof.

I think the jury was warranted in finding—as it did find—that the message was pregnant with significant and

evil portent; that it was calculated and intended to intimidate the recipient; and that it is immaterial that the Ku Klux Klan did not in.fact authorize or send the message. It is sufficient that the message purported to come from an organized band, because, as the majority say, the statute is directed against intimidation, and one might be as badly frightened by a false message, if he did not know it was false, as by a truthful one.

It is, of course, elementary law that, in testing the sufficiency of testimony to sustain a verdict, we give to the testimony tending so to do and to the inferences reasonably deducible therefrom its highest probative value. If the testimony here is so weighed, we have a message which assumes the existence of an improper relation between Waddell and appellant's wife, a fact denied by Waddell, and the option given Waddell is not to show that the charge was false, but to "come clean," that is, to say in writing whether he seduced Mrs. Kosier or was seduced by her. No organization, whatever its primary purpose may have been, had the right to send such a message; and, if such a message was sent or purported to have been sent, an intimidating threat was communicated, at least the jury might have so found, and the jury here did so find, and the law was violated, and the cause should not be dismissed.

I therefore most respectfully dissent; and am authorized to say that the CHIEF JUSTICE is of the opinion that the testimony is sufficient to sustain the verdict, and, as he concurs with the majority that the indictment is sufficient, it is his opinion that the judgment should be affirmed.