## HUFF *v.* STATE.

### Opinion delivered April 28, 1924.

1. INDICTMENT—INFORMATION—STATUTORY M I S D E M E A N O R.—An indictment for a statutory misdemeanor is sufficient if it describes the offense in the words of the statute.

2. INDICTMENT AND INFORMATION—SUFFICIENCY OF INDICTMENT.— An indictment under the Code is sufficient upon demurrer if it describes the offense with sufficient certainty to enable accused to prepare his defense. .

3. GAMING—INDICTMENT FOR DEALING IN FUTURES.—An indictment charging that defendant became a party to an unlawful contract to buy 100 bales of cotton to be settled for on a margin, without any intention of the cotton being actually delivered, was sufficient to charge the offense of dealing in futures, under Crawford & Moses' Dig., § 2653.

4. GAMING—DEALING IN FUTURES—EVIDENCE.—Under Crawford & Moses' Dig., § 2653, defining dealing in futures, conviction may be had on proof that one of the parties to the transaction did not, in good faith, intend actual delivery at the time the contract was made.

5. CRIMINAL LAW—POWER TO DIRECT VERDICT.—In misdemeanor cases where the punishment is by fine only, the circuit court has the power to direct a verdict of guilty where the facts are undisputed and guilt is the only inference that can be legally drawn from them.

6. GAMING—WAGERS ON TURN OF PRICES.—Where ventures are made on the turn of prices alone, with no *bona fide* intent to deal in the article, but merely to risk the difference between the rise and fall of the price at a given time, and no money is invested except so much as is required to cover the margin, the transaction represents not a transfer of property but a mere stake or wager upon the future price.

7. GAMING—DEALING IN FUTURES—VALIDITY OF STATUTE.—Crawford & Moses' Dig., § 2653, making unlawful every contract whereby any person shall agree to buy or sell certain articles when an actual delivery is not in good faith intended by the parties or either of them, whether made or to be performed wholly within the State or partly within and partly without the State, is valid.

8. GAMING—DEALING IN FUTURES—INTERSTATE COMMERCE.—A contract dealing in futures in Louisiana, made in Arkansas, is not protected by the interstate commerce clause of the Federal Constitution.

9. CRIMINAL LAW—POWER OF STATE.—A State may determine what acts committed within its limits shall be deemed criminal.

10. CRIMINAL LAW—EXCLUSION OF EVIDENCE—HARMLESS ERROR.—In a prosecution for dealing in futures, the court did not err in excluding depositions which only tended to prove that the seller intended to make delivery if so required by the purchaser, where the purchaser testified that there was no intention to require delivery.

11. GAMING—EVIDENCE OF INTENTION TO DELIVER.—In a prosecution for dealing in cotton futures, the court did not err in excluding evidence that an actual delivery of cotton was intended where defendant failed to produce a certificate from the clerk of the circuit court showing that a sale for actual delivery had been filed and recorded in his office, as required by Crawford & Moses' Dig., § 2665.

12. GAMING—REQUIREMENT THAT SALES BE RECORDED.—The Legislature has the power to make transactions in futures illegal unless filed for record in the clerk's office, as required by Crawford & Moses' Dig., § 2665.

Appeal from Faulkner Circuit Court; *George W. Clark,* Judge; affirmed.

*R. W. Robins,* for appellant.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, J. R. F. Huff prosecutes this appeal to reverse a judgment of conviction against him for violating the provisions of § 2653 of Crawford & Moses' Digest, which defines what is dealing in futures and prescribes the penalty for a violation of the act.

The first assignment of error is that the court erred in not sustaining a demurrer to the indictment. The body of the indictment reads as follows: "The grand jury of Faulkner County, in the name and by the authority of the State of Arkansas, accuse R. F. Huff of the crime of misdemeanor, committed as follows, to-wit: The said R. F. Huff, in the county and State aforesaid, on the 25th day of October, 1923, did unlawfully become a party to an unlawful contract to buy 100 bales of cotton, said cotton so pretended to be purchased was bought on margin without any intention of being actually delivered, said contract of purchase and sale being such as is commonly denominated as dealing in futures, and with the understanding that settlement was to be made on difference between contract price and market price, and did unlawfully, directly and indirectly participate in making, furthering and effectuating said contract, against the peace and dignity of the State of Arkansas."

It is well settled in this State that an indictment for a statutory misdemeanor is sufficient if it describes the offense in the words of the statute. This court has often said that an indictment under the Code is sufficient upon demurrer where it describes the offense with sufficient certainty to enable the accused to prepare his defense.

The section under which the indictment was founded, and which is referred to above, substantially provides that every contract whereby any person shall agree to buy, or sell and deliver, or sell with an agreement to deliver, any wheat, cotton, corn or other commodity, when in fact it is not in good faith intended by the parties,

or either of them, that an actual delivery of the article shall be made, is hereby declared to be unlawful, whether made or to be performed wholly within this State or partly within and partly without the State.

If dealing in futures means contracts of sale or purchase for the purpose of speculating upon the course of the market, where no actual transfer of property is intended by the parties, or either of them, and settlements are to be made upon margins, then there is no uncertainty in the description of the offense.

The indictment in plain language charges that the defendant, on the 25th day of October, 1923, in Faulkner County, Ark., became a party to an unlawful contract to buy one hundred bales of cotton, to be settled for on margin, without any intention of the cotton being actually delivered. Thus the defendant was apprised of the time, place, and manner of committing the offense charged, and, as a man of common experience in affairs of that kind, he knew what was the character and nature of the offense the State expected to prove against him, and what kind of evidence would be required of him to disprove the charge. Hence we hold that the indictment was not subject to demurrer under the rule announced in our decisions. *Fortenbury* v. *State,* 47 Ark. 188; *Barnes* v. *State,* 77 Ark. 124; and *State* v. *Western Union Tel. Co.,* 160 Ark. 444.

In the first mentioned case it was held that an indictment for dealing in futures in the language of the statute is sufficient. The difference between that statute and the present one is that, in the former, it was necessary to prove that both parties to the contract did not contemplate a delivery of the articles sold, and, under the present statute, to convict, it is only necessary to prove that one of the parties did not in good faith intend an actual delivery of the article at the time the contract was made.

H. C. Carpenter was the witness relied upon by the State for a conviction. According to his testimony, he

was a member of the cotton exchange which operated in Conway, Faulkner County, Arkansas, in the fall of 1923. He was engaged in buying cotton at the time. The defendant, R. F. Huff, was operating the cotton exchange. The way the witness did in buying the hundred bales of cotton in question was to put up on the contract a margin of $750, and if the cotton fell in value before the day of final payment, he was to advance more margin to cover the difference. He was asked to explain what he meant by a margin, and he described it as follows:

"A. Well, the margin, we had to put up in the bank $750 to buy 100 bales of cotton, and the bank, I presume they wired H. & B. Beer at New Orleans that they had the margin up there to protect the brokers, then we could place our order and buy 100 bales of cotton on the futures, so when I went to make the deal to buy 100 bales, and Mr. Huff was there, I would tell him to buy 100 bales of futures, and Mr. Huff was there, and of course, he would wire the order into New Orleans, and of course I got my contract then for the 100 bales."

Carpenter further stated that he bought the cotton as a mere speculation, and did not remember the price that he agreed to pay for it. It was never intended that the cotton should be delivered to him. If cotton went down, the buyer would have to put up more margin, or lose the amount of money he had put up in the beginning.

Carpenter further stated that he had made profits on his purchases a few times, and had lost some.

Under this testimony the court directed the jury to find the defendant guilty, and assess his punishment in any sum not less $500 nor more than $5,000.

The jury returned a verdict of guilty, and fixed the punishment of the defendant at a fine of $500.

It is the settled rule in this State that, in a misdemeanor case where the punishment is by fine only, the circuit court, having the power to set aside a verdict of

acquittal, also has the power to direct a verdict of guilty, where the facts are undisputed and where guilt is the only inference that can be legally drawn from them. *Roberts* v. *State,* 84 Ark. 564; *Josey* v. *State,* 88 Ark. 269; *Burton* v. *State,* 135 Ark. 164.

This brings us to a consideration of the validity of the statute. The evidence of Carpenter is undisputed, and the defendant fell under the ban of the statute if it is valid. Under our former statute prohibiting gambling in futures it was necessary to show the intention of both the buyer and the seller at the time of the contract in order to establish guilt. In other words, it was necessary to prove that the transaction between the buyer and seller was a mere cover for a gambling operation, and that neither party intended any delivery of the articles. *Fortenbury* v. *State,* 47 Ark. 188; *Phelps* v. *Holderness,* 56 Ark. 300, and *Barnes* v. *State,* 77 Ark. 124.

It will be noted that the present statute is essentially different. It makes the transaction a gambling one when in fact it is not, in good faith, intended by the parties, or either of them, that an actual delivery of the articles shall be made, and the transaction is unlawful whether made or to be performed wholly within the State or partly within and partly without the State.

In *Phelps* v. *Holderness,* 56 Ark. 300, the court said that, according to the ruling in some of the States, the broker or operator of the cotton exchange might be said to be the vendor of the purchaser, instead of his agent. The case of *Flagg* v. *Baldwin,* 38 N. J. Eq. 219, is cited in support of the holding. In that case the authorities are discussed and reviewed at great length, and the court held: "Contracts for speculation in stocks upon margins, when the broker and the customer do not contemplate or intend that the stock purchased or sold shall become or be treated as the stock of the customer, but the real transaction is a mere dealing in the differences between prices—that is, in the payment of future profits

or losses, as the event may be, are contracts of wager, dependent on a change or casualty. Such contracts, if made in this State, are unlawful, and securities given therefor are void by force of the provisions of the act to prevent gaming.''

By a section of the Criminal Code of Illinois it is provided that whoever contracts to have or give himself or another the option to sell or buy, at a future time, any grain or other commodity, etc., shall be fined not less than $10 nor more than $1,000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void. The Supreme Court of that State upheld the validity of the statute. The court said that the practice of gambling on the market prices of grain and other commodities is a great evil, and that the suppression of such evil is within the proper exercise of the police power of the State. The case was carried to the Supreme Court of the United States, where it was contended that the statute was repugnant to the Fourteenth Amendment of the Constitution of the United States. That court upheld the constitutionality of the statute in an opinion delivered by Mr. Justice HARLAN. *Booth* v. *Illinois,* 184 U. S. 425. The holding of the court is well stated in the syllabus, and we copy it as follows:

"1. If, looking at all the circumstances which attend, or may ordinarily attend, the pursuit of a particular calling, a State thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere unless, looking through mere forms and at the substance of the matter, they can say that the statute, enacted professedly to protect the public morals, has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law.

"2. It must be assumed, with regard to § 130 of the Criminal Code of Illinois, touching options to sell or

buy grain or other property at a future time, that the Legislature of the State was of the opinion that an effectual mode to suppress gambling grain contracts was to declare illegal all operations to sell or buy at a future time; and that this court cannot say that the means employed were not appropriate to the end sought to be attained and which it was competent for the State to accomplish.''

It has been said that gambling transactions of this sort are not to be confounded with legitimate speculations. Merchants may speculate upon the future prices of commodities in which they deal, and buy and sell accordingly. The case is different, however, when ventures are made upon the turn of prices alone, with no *bona fide* intent to deal in the article, but merely to risk the difference between the rise and fall of the price at a given time. In such cases the purpose is not to deal in the article, but to stake upon the rise or fall of its price. No money is invested in the purchase, but so much only is required as will cover the difference—a margin, as it is termed. Then the bargain represents not a transfer of property, but a mere stake or wager upon its future price. *Kirkpatrick* v. *Bonsall,* 72 Pa. St. 155.

Under the principles of law announced in the cases above cited, the transaction proved in the present case is a gambling contract, and the defendant falls under the ban of the statute. The undisputed testimony shows that there was no intention to require actual delivery of the cotton on the part of the purchaser, who is the prosecuting witness. The test which the statute requires is the intention on the part of either party not to actually deliver the articles bought or sold for future delivery. It does not make any difference how explicit the language of the contract is, if in fact there is no intention on the part of either of the parties to deliver; but when the real understanding is that, at the stipulated date, the losing party shall pay to the other the difference between

the market price and the contract price, the transaction is a gambling contract, and unlawful under the statute.

Nor can it be said that such gambling contracts are protected by the interstate commerce clause of the Federal Constitution. The statute makes it indictable where the contract is made or to be performed wholly within this State, or partly within and partly without the State. The contract in question was made within the State, and the State has the power to determine what acts committed within its limits shall be deemed criminal. When a shot is fired across the State line, at common law the crime is triable in the State where the shot took effect. But by statute the offense may be made punishable by the State in which the person stood when firing the shot. It is for the State to determine what acts committed within its limits shall be deemed criminal. *State* v. *Hall* (N. C.), 28 L. R. A. 59, and *State* v. *Clayton* (N. C.), 50 S. E. 866.

It follows that the statute is valid, and that the undisputed evidence establishes the guilt of the defendant.

The next assignment of error is that the court erred in refusing to permit the defendant to introduce in evidence certain depositions taken by him in New Orleans, Louisiana. These depositions only went to show that the cotton exchange at New Orleans intended to make a delivery of the cotton, if required to do so by the purchaser. As we have already seen, this would constitute no defense to the charge. The purchaser testified that there was no intention on his part, in the beginning, to require a delivery of the cotton, and that it was strictly a dealing between him and the defendant on margins. His testimony in this respect is corroborated by the fact that he only put up enough money to cover the difference between the contract and the market price of the cotton. Hence the defendant could not have been prejudiced by the refusal of the court to allow to be read to the jury the depositions of witnesses whose testimony could not have affected the result of the charge.

It is next insisted that the court erred in not allowing the defendant to introduce in evidence the contract signed by H. & B. Beer of the cotton exchange of New Orleans, Louisiana, in which it is stated that the transaction is subject to the rules and customs of the exchange where executed, and also with the distinct understanding that actual delivery is contemplated.

Under § 2665 of Crawford & Moses' Digest, before the defendant could insist, under a criminal prosecution, that he was selling or buying cotton, grain, or other commodities named in the act, for actual delivery, he must produce a certificate from the clerk of the circuit court of the county in which said transaction is said to have occurred, showing that said sale or purchase for actual delivery has been in good faith filed and recorded in his office, just as chattel mortgages or other conveyances of personal property are filed; and that this shall be admissible as evidence in defense of said prosecution.

Without complying with the statute in this regard, it could not be said that there was any intention for an actual delivery of the cotton. If the Legislature had the power to make transactions of this sort indictable, it also had the power to render them illegal, unless filed for record in the clerk's office in the manner required by the statute, and to prescribe the method of proving the same. In other words, the transaction would fall under the ban of the statute unless there was a substantial compliance by the parties in interest with the terms of the act.

It follows that there is no reversible error in the record, and the judgment will be affirmed.

Hart, J., (on rehearing). Counsel for the defendant earnestly insists that the court erred in holding the statute under which the defendant was convicted to be constitutional, and also in holding that the evidence was legally sufficient to support a directed verdict.

As pointed out in our original opinion, our former statute, which has been upheld by this court, forbade and

punished wagering contracts; that is, contracts in which
the parties stipulate that they shall gain or lose upon
the happening of an uncertain event, in which they have
no interest, except that arising from the possibility of
such gain or loss. Under that statute it was necessary,
in order to convict, for the court or jury trying the case
to find that there was no intention on the part of the
parties to deliver the cotton or other commodity in ques-
tion. Under it the intention not to deliver must have
been participated in by both parties. Section 2653 of
Crawford & Moses' Digest has changed the rule, and
provides in effect that transactions in wheat, cotton, corn,
or other commodities and stocks or bonds, by way of
margin, settlement or differences, and payment of the
gain or loss, without any intent to deliver the article
by the parties or either of them, are mere wagers, and
fall within the penalty provided in the statute. In Penn-
sylvania and New Jersey, it has been held that one who
enters into a stock speculation on margin, with a stock
broker, is to be considered as dealing with the broker as
a principal, and not as an agent. *Flagg* v. *Baldwin,* 38
N. J. Eq. 219, and *Puchizky* v. *DeHaven,* 97 Pa. St. 202.

The effect of our present statute is to make the cus-
tomer and the broker principals in contracts like the one
under consideration. If this end could be accomplished
by the decisions of the courts of last resort in the States
named, it is equally certain that the result could be
obtained by the Legislature by the passage of a statute to
that effect. The whole policy of dealing with wagering
contracts as an offense against the State falls within the
province of the Legislature. No good reason is given
and none is perceived why the Legislature might not
make contracts like the present one wagering contracts
where either of the parties did not in good faith intend
a delivery of the commodity in question as well as where
the delivery was not contemplated by both parties. The
subject of prohibiting wagering contracts falls within the
police power of the State, and the Legislature no doubt

felt that it might more effectively stop the practice by making such contracts unlawful where either of the parties intended nothing but the wager on the rise or fall in the price of the article and not to deal in it as a *bona fide* purchase. Hence we adhere to our original opinion that the act is constitutional.

We also adhere to our original opinion that the court was justified in directing the jury to find the defendant guilty under the evidence. Carpenter was engaged in buying and selling cotton in Conway in the fall of 1923; but he testified that there was no intention on his part that the cotton in question should be delivered to him. He does not recollect what the market price of the cotton was at that time, but says that it was something like 30 or 31 cents per pound. This would amount to $150 per bale or $15,000 for the hundred bales. Carpenter was only required to put up $750 for the hundred bales. No money was invested in the purchase of the cotton, but only so much was required of him as would cover the "margin," as it is called. The contract represents not a purchase of cotton, but a mere stake or wager upon its future price. The broker did not care whether or not the customer had the actual money with which to purchase the cotton. He was only interested in his having the necessary margin when the contract was made. The broker could close out the customer if it became necessary for him to put up more margin and he refused to do so. It was never intended, according to the testimony of Carpenter, that he should be required to pay anything whatever towards the purchase price of the cotton.

His testimony is corroborated by all the attending circumstances, and is not contradicted by any testimony introduced in evidence.

It follows that the motion for a rehearing will be denied.