## EX PARTE JACK FRYE.

No. 21883. Delivered December 10, 1941.

*Mandell & Wright* and *Elias Gatoura,* all of Houston, for relator.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

The following attorneys filed briefs as amicus curiae:

*Percy Straus, Jr., Sewall Mayer* and *Frank Campbell Fourmy,* all of Houston; *Joseph A. Padway* and *Herbert S. Thatcher,* both of Washington, D. C.; *Terrell, Davis, Hall & Clemens* and *Leroy Jeffers,* all of San Antonio, and *Rawlings & Sayers,* of Fort Worth.

KRUEGER, Judge.

Relator was indicted by the grand jury of Harris County, charged with a violation of Article 1621b of the Penal Code of this State, as amended by Chapter 100, Acts of the 47th Legislature, Regular Session, which reads as follows:

"Section 1. It shall be unlawful for any person by the use of force or violence, or threat of the use of force or violence, to prevent or to attempt to prevent any person from engaging in any lawful vocation within this State. Any person guilty of violating this Section shall be deemed guilty of a felony and, upon conviction thereof, shall be punished by confinement in the State Penitentiary for not less than one year nor more than two (2) years.

"Sec. 2. It shall be unlawful for any person acting in concert with one or more other persons to assemble at or near any place where a 'labor dispute' exists and by force or violence prevent or attempt to prevent any person from engaging in any lawful vocation, or for any person, acting either by himself, or as a member of any group or organization, or acting in concert with one or more other persons, to promote, encourage, or aid any such unlawful assemblage. Any person guilty of violating this Section shall be deemed guilty of a felony, and upon conviction thereof shall be punished by confinement in the State Penitentiary for not less than one year, nor more than two (2) years.

"Sec. 3. The term 'labor dispute' as used in this Act shall include any controversy between an employer and two (2) or more of his employees concerning the terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment.

"Sec. 4. The provisions of this Act shall be cumulative of all other existing Articles of the Penal Code upon the same subject, and in the event of a conflict between existing Articles and the provisions of this Act, then and in that event the provisions, offenses, and punishments set forth herein shall prevail over such existing Articles.

"Sec. 5. If any section, paragraph, clause or provision of this Act is declared unconstitutional, inoperative, or invalid by any Court of competent jurisdiction, the same shall not affect nor invalidate the remainder of this Act.

"Sec. 6. The fact that it is essential that industries of this State be protected from strikes and that all citizens of this State be protected from the use of violence in labor disputes

creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and it is hereby suspended, and this Act shall be in full force and effect from and after its passage, and it is so enacted."

A capias was issued for the relator's arrest and he was taken into custody by the sheriff and confined.

On the 24th day of September, 1941, relator applied to this court for a writ of habeas corpus on the ground that he was illegally restrained of his liberty because:

(1) The statute above set out contravenes the equal protection clause of the Fourteenth Amendment to the Constitution of the United States;

(2) That it contravenes Sections 3, 8, 10, 13, 19 and 27 of Article I of the Constitution of the State of Texas, and violates Article 6 of the Penal Code of this state;

(3) That the statute is so indefinitely framed and is of such doubtful construction that it cannot be understood either from the language in which it is expressed or from some other written law of the State and is therefore inoperative as being a denial of due process.

We do not deem it necessary to set out the various constitutional provisions mentioned inasmuch as every one is familiar with them and a mere reference thereto is sufficient for an understanding of the relator's contention. However, we do deem it proper to set out Article 6 of the Penal Code which reads as follows:

"Whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed, or from some other written law of the State, such penal law shall be regarded as wholly inoperative."

It is obvious from the foregoing statement that a proper solution of the questions presented calls for a construction of the statute under which this prosecution was initiated. Consequently the fundamental principle of statutory construction must be kept in mind. Every presumption is in favor of the constitutionality of an act of the legislative body of a state and the courts will not declare it invalid unless, in their judgment,

it clearly and unmistakably comes within the inhibition of the Constitution. See Ex parte Mabry, 5 Tex. Cr. App. 93; Cooley's Const. Lim. (8th Ed.) Vol. 1; page 371; Black's Constitutional Law, (3rd Ed.) p. 68, sec. 39; Graves v. Minnesota, 272 U. S. 425, 71 L. Ed. 331, 47 S. Ct. 122; 11 Amer. Jur. p. 792, sec. 130; Fort Smith Light & Traction Co. v. Board of Improvement of Paving District, etc. 274 U. S. 387, 71 L. Ed. 1112.

The authority of the legislature to enact laws designed to prevent crime and to prescribe adequate punishment for a breach thereof is not questioned here. The sole questions presented by the record are: (a) that the statute under which this prosecution is brought denies relator equal protection of the law and (b) curtails his constutional right of freedom of the press, freedom of speech and freedom of assembly; and furthermore, that the act is so indefinitely framed and of such doubtful construction that it cannot be understood either from the language in which it is expressed or from some other written law of the State.

We shall endeavor to discuss each of the contentions in the order above stated. It seems that the real basis for his first contention is that this statute which makes a person a felon who, by force or violence, prevents or attempts to prevent any person from engaging in any lawful vocation, even though the offending party does not know that the party assaulted is engaged in a lawful occupation, is void for uncertainty.

In support of his contention relator cites us to the case of Ratcliff v. State, 289 S. W. 1072. In this case the prosecution was initiated under Article 1094 of the Penal Code, which did not embrace the words "to prevent or to attempt to prevent" as does the statute in question. Hence that case is of little, if any, aid to us in deciding the questions presented.

In Brill's Cyclopedia of Criminal Law, Vol. 1, p. 174, sec. 86, the rule is stated as follows:

"Whether or not a criminal intent is an essential element of a particular statutory offense depends upon the intent of the legislature, to be arrived at by a construction of the statute in question. Of course intent is essential where the legislature has incorporated into the statute a word or words descriptive of the offense which imply the necessity of a mind at fault before there can be a crime."

It seems to be the rule that where the offense is *malum in se,* the intent is an element of the offense and should be incorporated either by express words or by words which fairly include the word "intent" within their meaning. The statute in question contains words which, when given a common-sense construction, embrace the word "intent" within their meaning. No one could attempt to prevent a person from doing a certain thing unless he had the intent to accomplish that object and unless he knew that the person was doing or was about to do the act sought to be prevented. For example, A could not prevent or attempt to prevent B from committing theft or burglary unless he knew that B was committing or was about to commit the act and that he entertained the intent to prevent it. Hence, A would necessarily have the intent to prevent the commission of the offense by B. Consequently the language of the statute clearly implies the intent. It is a well-recognized rule of statutory construction that the legislative intent must be ascertained from the legislative act. It is not necessary that certain words which constitute an element of the offense should be employed. It is sufficient if words of like import are used and which convey the same idea or have the same general meaning.

Relator also contends that the statute in question denies him the equal protection of the law and he seeks to illustrate his contention by making the following observation: If A strikes B, who is engaged in a lawful occupation in order to prevent or attempt to prevent him from engaging in a lawful vocation, he is guilty of a felony. Yet, if B strikes A who is not so engaged, he is merely guilty of a misdemeanor. Hence, the unequal protection of the law. To the casual observer this reasoning may seem plausible but a critical analysis will lead one to the discovery of a more far-reaching objective in the two offenses. When B assaults A, who is not engaged in a gainful occupation, the assault is directed primarily against the person, while A, who assaults B, who is engaged in a gainful occupation, the assault is not only directed against the person but against his vocation for the purpose of preventing B from pursuing his occupation and to deprive him of the fruits of his labor. It is obvious that the assault by A upon B under the circumstances stated, not only deprives B of his labor but in a measure affects the entire economic fabric of the country. Hence the act of A passes into a more serious class and justifies a greater punishment than the act of B. To hold that the law in question is in contravention of the Federal Constitution on

the ground of unequal protection of the law would be creating a fertile ground from which an attack might be made on the law relating to robbery. A, who makes an assault upon B for the purpose of depriving him of some personal property, is guilty of a felony, but if B, who assaults A, who has no personal property, deprives him of nothing and does not intend to deprive him of anything, and is therefore merely guilty of a misdemeanor. It is obvious that the classification of the offenses and the penalty prescribed for each is a reasonable exercise of legislative functions within the purview of the Constitution.

In the case of Ex parte Tigner, 132 S. W. (2d) 885, 139 Tex. Cr. R. 452, this court held that the equal protection clause of the Federal Constitution does not take from the State the power to classify in the exercise of its police power but admits of the exercise of a wide scope of discretion and avoids what is done only when it is without any reasonable basis but purely arbitrary. This case was taken to the Supreme Court of the United States and by that court affirmed. In that case many authorities are cited in support of the principle there announced.

In this State we have statutes governing simple and aggravated assaults. The punishment prescribed for aggravated assault is much more severe than that prescribed for simple assault. Article 1147 of the Penal Code provides, among other things, that if an adult male person strikes a female, he is guilty of an aggravated assault, but if the female strikes an adult male person, she is merely guilty of a simple assault. So, if an adult male person strikes a child, he is guilty of an aggravated assault, but if the child strikes the adult, he is merely guilty of a simple assault. This statute has not been held to be in contravention of the equal protection clause of the Federal Constitution.

In the case of Traux v. Corrigan, 257 U. S. 312, 66 L. Ed. 254, the Supreme Court of the United tSates held that it is not an invalid classification under the situation presented so long as the statute which classified did not authorize illegal acts. See also Senn v. Tile Layers Protective Union, 301 U. S. 468, 81 L. Ed. 1229.

Lewis' Sutherland Statutory Construction, (2nd Ed.) Vol. 2, p. 729, lays down the following rule:

"A presumption is always indulged in favor of the constitutionality of an act, and that construction will be adopted which will sustain the act, where the language used will permit such interpretation. In construction, words may be restricted or enlarged, according to the intent with which they are used, and their meaning as used may be gathered from the purpose of the enactment. And when necessary that which is implied as well as that which is expressed may be held to be included within a statute."

The same author, on page 980, section 528, announces the following doctrine:

"Courts will not by the strict construction of penal statutes defeat the intention of the law-maker. Where the intent is plain it will be carried into effect. It will not be evaded or defeated on the principle of strict construction. The principle will be adherred to that the case must be brought within the letter and spirit of the enactment, but the intent of a criminal statute may be ascertained from a consideration of all its provisions, and that intent will be carried into effect. Such statutes will not be construed so strictly as to defeat the obvious intention and purpose of the legislature.

" 'While all statutes pertaining to crimes and their punishment should be strictly construed, and nothing left to intendment, they should not be so construed as to thwart the evident will and intention of those who enacted them, where that intention is plainly and fairly deductible from the law itself'."

Article 7 of the Penal Code provides as follows:

"This Code and every other law upon the subject of crime which may be enacted shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects; and no person shall be punished for an offense which is not made penal by the plain import of the words of a law."

Bearing in mind the foregoing rule for the construction of the penal statute above set out, what did the Legislature mean by the use of the words "according to the plain import of the language in which it is written?" The Legislature must have had in mind the meaning and general use ascribed to the word "import." Webster's New International Dictionary de-

fines "import" as follows: "That which a word, phrase, or document contains as its signification or intention." Now, what is the signification of the words "to prevent or attempt to prevent" as contained in the statute under consideration? The words "prevent or attempt to prevent" mean to "anticipate, forestall, to intercept, hinder, frustrate, thwart, to keep from happening." Consequently, we are constrained to give those words such a construction. This being true, the words "prevent or attempt to prevent" embrace knowledge and intent. To better illustrate our conclusion, we make the following observation: A attempts to prevent B from committing burglary. Can it be said that A could attempt to prevent it if he had no knowledge that B was going to commit the act? Can it be said that he could attempt to prevent it if he did not intend so to do? Could A prevent the doing of an act unless he intended to thwart or forestall it? It is obvious that he could not intend to prevent an act unless he knew that it was going to be committed. Hence the words "prevent or attempt to prevent" include within the scope of their meaning knowledge and intent. This being true, we think the statute is sufficiently definite to define the offense and should be sustained.

In the case of Shipp v. State, 196 S. W. 840, 81 Tex. Cr. R. 328, the appellant was convicted of an attempt to induce another to commit false swearing. This court in discussing the meaning of the word "attempt" used language as follows:

"The authorities seem to be uniform that where an act is done with the intent to commit a crime, and tending, but failing, to effect its commission, there is an attempt to commit the ultimate crime, which in this connection would be perjury under the indictment. There are a great many authorities which might be cited to support this proposition, but it is deemed hardly necessary. The word 'attempt' may be defined as an intent to do a thing, etc."

In 12 Tex. Jur. p. 302, secs. 59 and 60, the word "attempt" is defined. We do not deem it necessary to quote all of said sections but only the most pertinent part thereof, which reads as follows:

"An attempt is an endeavor to accomplish a crime carried beyond mere preparation, but falling short of the ultimate design in any part of it. It has also been defined as an intent to do a thing, coupled with an act which falls short of the thing intended."

We believe that by analogy the case of Brady v. Bartlett, et al, 56 Cal. 350, sustains the conclusion we have reached in this case. In that case the court said:

"It is averred in the defense setting up the matters alleged to be fraudulent, that, owing to the side agreement, the defendants 'were prevented from protesting against the said work, which they desired to do.' As to these averments, which were in issue, nothing is found at all. If the issue on these allegations is material, that is, if the allegations are requisite to make out the defense, the failure to find on it is an error, for which the judgment should be reversed, and the cause remanded, that a finding may be had on it. (Billings v. Everett, 52 Cal. 661). But it is strongly implied, by the averment above quoted, that the defendants were aware of the matters of alleged fraud in time to have protested against the work. If they were ignorant of them, how can it be truthfully said they were prevented from protesting? Webster, after giving two definitions of the verb 'prevent' (1st, to go before; to precede; 2nd, to be beforehand with; to get the start of; to anticipate; to forestall), which he says are *obslete,* defines it to mean: 'To intercept and stop; to hinder, to obstruct; to impede; to thwart.' It cannot be said that one is hindered, or obstructed, or impeded, or thwarted, unless an effort is made to accomplish that which is hindered, or obstructed, or impeded, or thwarted. When such an effort is made, and it is defeated by the act of some person, it can then be said to be prevented. It may be conjectured or inferred that the machinations of a person would have defeated any effort to accomplish the end arrived at, but such an averment would lack the essential of a good pleading, unless it appeared clearly that the acts complained of could have no other result than to prevent."

Relator's second contention is that the statute in question is an infringement upon his fundamental rights comprised within the terms "freedom of liberty, freedom of speech and the right of assembly" and is therefore in contravention of the Fourteenth Amendment to the Federal Constitution. The statute in question does not prevent one from peaceably exercising and enjoying those freedoms so long as he does so in a peaceful and orderly manner. However, when under the pretense of exercising any of those constitutional guarantees he resorts to force or violence, he then steps beyond those constitutional boundaries, destroys the public peace and good order, becomes a transgressor upon the rights of his fellow men and assumes the re-

sponsibility for his wrongful acts. This seems to us to be such an elementary legal proposition that it needs no citation of authorities in support thereof. Force and violence are not sheltered by any constitutional provision. However, we believe that the case of Whitney v. State of California, 274 U. S. 357, 71 L. Ed. 1095, supports the conclusion herein expressed. The gist of the offense here denounced is the use of force and violence directed by one person against another who is engaged in a lawful vocation to prevent him from pursuing the same. Relator cites us to the case of Thornhill v. Alabama, 310 U. S. 88, 84 L. Ed. 1093, and Carlson v. California, 84 L. Ed. 1108, in support of his contention. We do not regard these cases as decisive of the questions herein presented. We think that the case of Milk Wagon Drivers Union of Chicago v. Meadowmoor Dairies, Inc., 85 L. Ed. 836 is more pertinent and far more illuminating to the questions under consideration than the preceding two cases mentioned.

Relator's third contention is that the statute in question is so vague, indefinite and uncertain that those who are subject to it are not informed as to what conduct on their part will render them liable to its penalties, in this, that it prescribes a punishment for one who, by the use of force or violence, prevents or attempts to prevent any person from engaging in a lawful vocation, independent of intent or knowledge on the part of the offender. If intent and knowledge are not comprehended within the phraseology of the act, then there might be merit in his contention, but we have herein sought to demonstrate that intent and knowledge were inherent in the language of the act. A penal statute is sufficiently certain, although it may use general terms, if the offense is so defined as to convey to a person of ordinary intelligence an adequate description of the evil or mischief intended to be prohibited. It is our opinion that the evil intended to be prohibited here is sufficiently stated to convey to a person of ordinary intelligence what conduct on his part will bring him within the inhibition of the statute. It may not be amiss to here quote the well-recognized axion that things which are equal to the same thing are equal to each other.

Relator also contends that the words "at or near any place where a labor dispute exists" are too uncertain and indefinite to apprise him of what is meant by the word "near" inasmuch as no rule is stated by which the distance may be ascertained so as to avoid offending against the statute. This may be true,

but nevertheless, the statute may be upheld since the word "near" is not fatal to the other provisions thereof.

In the case of Moore v. State, 112 S. W. (2d) 194, we held that the use of such term in connection with the word "at" did not affect the balance of the act. The word "at" is synonymous with the word "on" and since the act provides that the invalidity of any portion thereof will not affect the validity of the balance, the statute is not invalid. We do not wish to be understood as holding that the word "near," which is a relative term, is so indefinite as to invalidate the statute. The term "near" is defined by Webster as "within a little distance from; close or upon." It is our opinion that the word "near" means within the general sphere or scope of the labor dispute so that the offening party may accomplish his purpose and object. A person is deemed to be engaged in a lawful vocation who is on his way to or from the place where he is engaged to work. In support of our contention we cite Ralph v. State, 148 S. W. (2d) 401; State v. Tibbetts, 205 Pac. 776, (in fact, p. 779, on motion for rehearing) where the words "vicinity," "locality," as well as "near the place" have been thoroughly discussed and numerous authorities cited.

Whether relator knew that he was "at or on" a place where a labor dispute existed at the time he resorted to the use of force or violence to prevent or attempt to prevent any one from engaging in any lawful vocation and whether he knew that the party assaulted was engaged in a lawful occupation, might be interposed as a defense. However, the words "knowing" or "knowingly" do not appear in Article 1150, P. C., commonly known as the statute making it an offense for one who operates an automobile upon the public highways of this State and strikes another but fails to stop and render all necessary aid, etc. This court held that want of knowledge that he had injured some one would excuse him and be a defense to the prosecution. See Scott v. State, 233 S. W. 1097, 16 A. L. R. 1420; Stalling v. State, 234 S. W. 914.

The position taken by the court in this case is supported by the Supreme Court of Michigan in the case of People v. Washburn, 280 N. W. 132, 123 A. L. R. 311, appeal denied, 83 L. Ed. 363.

Having reached the conclusion that the statute is valid, the

relator is remanded to the custody of the Sheriff of Harris County.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

NOTE: While the above case has not been appealed from, the companion case of Ex parte Ted Sanford, No. 21885, has been appealed to the United States Supreme Court, in which the holdings in the above case have been attacked.—Reporter.