SMITH AND BROWN *v.* STATE.

4345                                                    179 S. W. 2d 185

Opinion delivered April 10, 1944.

*John L. Sullivan* and *Coy M. Nixon,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

*Coleman, Mann, McCulloch & Goodwin, amici curiae.*

*C. E. Daggett, amicus curiae.*

McHANEY, J.   Appellants were jointly charged by information with the "crime of felony committed as follows, to-wit: The said defendants on the 20th day of August, 1943, in Jefferson county, Arkansas, did then and there willfully, unlawfully and feloniously, by threats and the use of force and violence, prevent R. A. Dickey from

engaging in the painting of a building in Pine Bluff, Arkansas, said painting being a lawful vocation, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Arkansas.''

Trial resulted in a verdict finding appellants guilty and fixing their punishment at confinement in the penitentiary for one year, upon which judgment was entered, and from which judgment they have appealed.

The only assignment of error argued for a reversal is that the evidence is insufficient to support the verdict and judgment against them.

The prosecution was based on § 1 of Act 193 of 1943, which reads as follows: ''It shall be unlawful for any person by the use of force or violence, or threat of the use of force or violence, to prevent or attempt to prevent any person from engaging in any lawful vocation within this state. Any person guilty of violating this section shall be deemed guilty of a felony, and upon conviction thereof shall be punished by confinement in the state penitentiary for not less than one (1) year, nor more than (2) years.''

We think the information charged the offense of felony substantially in the language of the statute just quoted and was sufficient to put appellants to trial, if the statute is a valid enactment. While appellants have not challenged the constitutionality of said act, except in their motion for a new trial, still their conviction and sentence under it could not be permitted to stand, if in fact it is unconstitutional and void.

This is the first case of conviction, under said statute, coming to this court since its enactment a little more than a year ago. Counsel *amici curiae* and the attorney general have filed excellent briefs in support of the constitutionality of said act, and also in support of the sufficiency of the evidence. By these briefs our attention is directed to the fact that the act here in question is an exact or verbatim copy of the Texas statute, Art. 1621b of Texas Penal Code as amended by Chapter 100, Acts 47th Legislature, Regular Session, Vernon's Ann. P. C. Art.

1621b, except the latter statute carries an emergency clause, whereas, ours does not. On December 10, 1941, the Court of Criminal Appeals of Texas sustained the constitutionality of the Texas statute in *Ex parte Frye,* 143 Tex. Cr. R. 9, 156 S. W. 2d 531. On the same date the same Texas court sustained the same statute in *Ex parte Sanford,* 144 Tex. Cr. R. 430, 157 S. W. 2d 899, on the authority of the Frye case. The Sanford case was appealed to the U. S. Supreme Court, where it was dismissed on the ground that it did not involve a federal question. *Sanford* v. *Hill,* 316 U. S. 647, 62 Sup. Ct. 1292, 86 L. Ed. 1731.

It thus appears that said Act 193 of 1943 was borrowed from the State of Texas and along with it the construction theretofore given it by the highest court of that state in criminal matters. In the Frye case, the court said: "Relator also contends that the statute in question denies him the equal protection of the law and he seeks to illustrate his contention by making the following observation: If A strikes B, who is engaged in a lawful occupation in order to prevent or attempt to prevent him from engaging in a lawful vocation, he is guilty of a felony. Yet, if B strikes A who is not so engaged, he is merely guilty of a misdemeanor. Hence, the unequal protection of the law. To the casual observer this reasoning may seem plausible, but a critical analysis will lead one to the discovery of a more far-reaching objective in the two offenses. When B assaults A, who is not engaged in a gainful occupation, the assault is directed primarily against the person, while A, who assaults B, who is engaged in a gainful occupation, the assault is not only directed against the person but against his vocation for the purpose of preventing B from pursuing his occupation and to deprive him of the fruits of his labor. It is obvious that the assault by A upon B under the circumstances stated not only deprives B of his labor, but in a measure affects the entire economic fabric of the country. Hence the act of A passes into a more serious class and justifies a greater punishment than the act of B. To hold that the law in question is in contravention of the federal Constitution on the ground of unequal protection

of the law would be creating a fertile ground from which an attack might be made on the law relating to robbery. A, who makes an assault upon B for the purpose of depriving him of some personal property, is guilty of a felony, but if B, who assaults A, who has no personal property, deprives him of nothing and does not intend to deprive him of anything, and is therefore merely guilty of a misdemeanor. It is obvious that the classification of the offenses and the penalty prescribed for each is a reasonable exercise of legislative functions within the purview of the Constitution.''

The courts of Michigan and Wisconsin have sustained similar statutes to the one here involved. See *People* y. *Washburn,* 285 Mich. 119, 280 N. W. 132, 123 A. L. R. 311; *Fischer* v. *State,* 101 Wis. 23, 76 N. W. 594.

The gravamen of the offense prohibited by the statute is ''the use of force or violence, or the threat of the use of force or violence, to prevent any person from engaging in any lawful vocation within this state.'' No one would seriously contend that force and violence, or intimidation and coercion, due thereto, are within the pale of constitutional protection. And the power to prohibit their exercise is within the police power of the state, acting through its legislature. ''The state,'' said Judge HART, in *Huff* v. *State,* 164 Ark. 211, 261 S. W. 654, ''has the power to determine what acts committed within its limits shall be deemed criminal.'' Having done so here, and having classified the offense here denounced as a felony, it cannot be said to be an arbitrary or an unreasonable one when considered in connection with the public good it seeks to protect. There is here no question of a labor dispute or of the right of peaceful picketing, but even picketing when accompanied by force, violence, intimidation or coercion cannot find any protection under the constitutional guaranties of freedom of speech and freedom of the press. *Local Union 313* v. *Stathakis,* 135 Ark. 86, 205 S. W. 450, 6 A. L. R. 894; *Riggs* v. *Tucker Duck & Rubber Co.,* 196 Ark. 571, 119 S. W. 2d 507; *Milk Wagon Drivers' Union* v. *Meadowmoore Dairies,* 312 U. S. 287, 61 Sup. Ct. 552, 86 L. Ed. 836, 132 A. L. R. 1200.

In the last mentioned case, it was said: ''Freedom of speech and freedom of the press cannot be too often invoked as basic to our scheme of society. But these liberties will not be advanced or even maintained by denying to the states with all their resources, including the instrumentality of their courts, the power to deal with coercion due to extensive violence.''

There the Supreme Court reviewed and distinguished *Thornhill* v. *Alabama,* 310 U. S. 88, 60 Sup. Ct. 736, 84 L. Ed. 1093, and *Carlson* v. *California,* 310 U. S. 106, 60 Sup. Ct. 746, 84 L. Ed. 1104, and said: ''Entanglement with violence was expressly out of those cases.''

We conclude, therefore, that said Act 193 is not open to constitutional objection.

The only other question to be considered is the sufficiency of the evidence to sustain the verdict and judgment, and we think it is amply sufficient. Viewed in the light most favorable to the state, which we must do in determining this question, the evidence, briefly stated, is as follows: R. A. Dickey was employed by the owners of a building on Main street in Pine Bluff to paint the interior of said building. He had employed four negroes to assist him in this work, and the paint was being applied with a spray gun operated by an electric motor. At about 9:30 p. m. August 20, 1943, while said helpers were engaged in mixing paint in the container of the spraying machine located about the middle of the store, with the motor running, appellants and another came up behind Dickey, who was standing near the machine with his back to the door, and ordered the motor ''shut down'' and work to stop. Brown said: ''Don't put any more paint in that pot. You will have to stop.'' Dickey told them he would not have to stop and that he would call the police, and started to do so, when he was grabbed on either side by appellants and was struck on the back of his head. A fight ensued, Dickey trying to get out of the door. They beat him on the head and face, cutting his lip, and tearing off his shirt. The fight continued and Dickey finally got outside the building, trying to escape. Both appellants followed him out on the street, striking him

with a mixing paddle and a floor brush, and was knocked down by a lick on the head with the floor brush. Someone across the street hollowed "That's enough," and a stranger assisted him in getting up and into the building. As a result of the assault upon him, his helpers were frightened and ran away, and he was prevented from continuing the work until the following Monday, the fight having occurred on Friday. Appellants admit they went into said building and had an altercation with Mr. Dickey, but give a different version of it and how it occurred. They were employed at the Pine Bluff Arsenal, were members of the Painters' Union, and "they thought the building being on Main street, it was better for union painters to paint the building than for the negroes he was using." They admitted they asked him to stop, but denied they undertook by force and violence to compel him to stop.

We think the evidence is sufficient to support the verdict and the judgment is accordingly affirmed.

ROBINS, J., dissenting. The view I take of the evidence makes it unnecessary to determine whether the Act here involved is void for uncertainty or because of any conflict with the Constitution. Under the Act and under the information on which appellants were tried it was necessary for the state to prove that appellants, either by threats or by force and violence, prevented R. A. Dickey from engaging in a lawful vocation.

Now, assuming that interfering with the doing of a particular piece of work by a person is preventing that person from engaging in the vocation of which that piece of work was a part, the evidence of Mr. Dickey does not establish that appellants, either by threats or by force and violence, prevented him from doing the painting. According to his testimony, appellants did not at any time make any threats, and no violence at all occurred until he announced his intention to call the officers, whereupon, as he testified, one or more of appellants assaulted him. This testimony, while sufficient to convict appellants of an unlawful assault, is not sufficient, in my

opinion, to show guilt of the offense charged. I, therefore, respectfully dissent from the opinion of the majority.