LEWIS AND WREN *v.* STATE.

4696                                                                 251 S. W. 2d 490

Opinion delivered October 6, 1952.

*Gordon & Gordon, Bob Bailey* and *Bob Bailey, Jr.,* for appellant.

*Ike Murry,* Attorney General and *Dowell Anders,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. The defendants, Steve Lewis and Harry H. Wren, were jointly charged with involuntary manslaughter in the killing of Mrs. Nancy Pounds, 86 years of age. The defendants were tried jointly and convicted and their punishment fixed by the jury at one year and one day in the penitentiary.

The charges arose out of an automobile collision which occurred shortly after midnight on U. S. Highway 64 about three miles west of Morrilton, Arkansas. The evidence on behalf of the State shows that defendants who resided at Atkins, Arkansas, were close friends, and that Wren usually drove Lewis's car. On the night in question they did considerable driving from place to place in the Lewis automobile. En route from Atkins to Morrilton they purchased 12 cans of beer and did considerable drinking of beer and gin from 7 p. m. until immediately prior to the collision. After visiting a friend a few miles from Morrilton late in the evening where the drinking was continued, the defendants were driving west in Lewis's automobile when it collided headon with a car being driven east by Mrs. Mabel Law and in which Mrs. Pounds was a passenger. There was evidence that the car occupied by defendants was weaving from one side of the road to the other shortly before the collision and ran into the car operated by Mrs. Law on her side of the road after she had turned her car to the right with the right wheels off the pavement in an effort to avoid the collision. Occupants of both automobiles were seriously injured and Mrs. Pounds died from her injuries three days later.

Several witnesses testified that defendants had the odor of alcohol on their breaths and a portion of a "fifth" of gin was found in the car following the collision. The respective positions in which the defendants were found unconscious after the collision and the nature of the physical damage to the car occupied by them indicated that Lewis was driving at the time of the collision,

while there was other substantial evidence that Wren was the driver. Each defendant testified that he was asleep at the time of the collision and that the car was being driven by the other. Both defendants admitted that they had done considerable drinking, but the defendant Lewis denied that he was drunk.

In urging reversal defendants contend that the trial court erred in (1) giving certain instructions, (2) overruling their motions to sever, (3) denying the motion of Lewis for a continuance, (4) refusing to disqualify a petit juror for cause, and (5) allowing only eight peremptory challenges to both defendants. It is also insisted that the evidence is insufficient to sustain the verdicts.

(1) *The Instructions.* We first consider the instructions for the reason that the correctness of the court's action thereon represents the crux of the case and has considerable bearing on some of the other questions presented. The charges against the defendants were brought under Ark. Stats., § 41-2209.[1]

The court gave several instructions stating in effect that if one of the defendants was driving the car in a reckless, willful or wanton disregard for the safety of others, and the other defendant was riding as a passenger therein and was aiding, abetting or assisting in the unlawful operation of the car by the co-defendant, then both defendants could be found guilty of involuntary manslaughter. The jury were further told that if either defendant was under the influence of intoxicants and incapable of properly operating the car and that the nondriver, with knowledge of the co-defendant's condition and incapacity, knowingly permitted him to operate the car in a reckless and unlawful manner without protest and did encourage and advise the driving of the car by

---

[1] This section reads: "If the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, done without due caution and circumspection, it shall be manslaughter. Provided further that when the death of any person ensues within one (1) year as a proximate result of injury received by the driving of any vehicle in reckless, willful or wanton disregard of the safety of others, the person so operating such vehicle shall be deemed guilty of involuntary manslaughter."

the other under such circumstances, then the non-driver would be guilty of criminal negligence and involuntary manslaughter in the event that the jury found the driver guilty of such charge.

The court also gave Instruction No. 11 which reads: "The mere fact that the jury finds from the evidence beyond a reasonable doubt, if it does so find, that one of the defendants, either Wren or Lewis, was riding as a passenger in the car involved in the accident with the car in which Mrs. Pounds was a passenger, would not of itself be sufficient to convict the defendant because he was a passenger therein, but the jury must further find, beyond a reasonable doubt from the evidence, that one of the defendants was personally driving the motor vehicle in an unlawful, or drunken and intoxicated condition, or was standing by aiding or abetting in the unlawful driving and operation of the automobile by the other defendant which caused or brought about the death of Mrs. Pounds." Other instructions were given presenting the defense of each defendant on these issues.

It is conceded that these instructions were based on the law as declared by this court in *Fitzhugh* v. *State,* 207 Ark. 117, 179 S. W. 2d 173. In that case this court became committed to the rule that an accused may be convicted as an accessory before the fact to involuntary manslaughter and that under our statute (Ark. Stats.; § 41-118) such accused is deemed a principal offender. In the Fitzhugh case the defendant claimed that he was too drunk to remember anything about the collision and that another was driving the car at the time. This court said: "We think the jury would have been warranted in finding from all the facts and circumstances presented that the truck in question belonged to appellant; that he was on the front seat at the time of the collision, and that if not actually driving, was sitting beside the person who might have been driving; that appellant was not so drunk, but that he knew what was happening, knew that the truck, a dangerous instrumentality, was being driven on the wrong side of the road (§ 6714, Pope's Digest) in

an unlawful manner, and was, therefore, an accessory and punishable as principal.''

In *Story* v. *U. S.*, 57 App. D. C. 3, 16 F. 2d 342, 53 A. L. R. 246, the defendants, as here, were jointly charged with involuntary manslaughter and the court said: ''If the owner of a dangerous instrumentality like an automobile knowingly puts that instrumentality in the immediate control of a careless and reckless driver, sits by his side, and permits him without protest so recklessly and negligently to operate the car as to cause the death of another, he is as much responsible as the man at the wheel.'' The court also approved the following statement in *Ex parte Liotard*, 47 Nev. 169, 217 P. 960, 30 A. L. R. 63: ''No one would contend that the owner of a car would not be liable for injuries resulting from his operating it while intoxicated. How, then, can he escape the consequence when he sits by and permits another, who is intoxicated, to operate it? . . . One who is so careless of the rights of others as to use a dangerous instrumentality while incapacitated by drink, or who permits others to do so, as here shown, invites the consequences. He must pay the penalty.'' See, also, Anno. 99 A. L. R. 771.

It is true that the authorities are divided on the question as to whether there can be an accessory before the fact to manslaughter, some courts holding that there cannot be accessories before the fact to voluntary manslaughter while there can be such accessories in cases of involuntary manslaughter. 40 C. J. S., Homicide, § 9 b. We think the rule adopted in the Fitzhugh case is supported by reason and the weight of authority. The trial court carefully followed our holding in that case in the instructions given here and we find no error in them.

2. *Motions to Sever.* Each defendant filed a motion for a separate trial under the joint information and the motions were overruled. It appears from the motion filed by Wren that he alone was initially charged with the offense and that a trial on said charge resulted in a mistrial when the jury could not agree on a verdict. Sub-

sequent to the filing of the first information the prosecuting attorney filed a joint information and the record does not disclose what disposition, if any, was made of the first information. Apparently the State elected to proceed on the joint information in lieu of the first information filed and this practice has been approved. *Cole and Jones* v. *State,* 214 Ark. 387, 216 S. W. 2d 402.

Ark. Stats., § 43-1802, provides that when two defendants are jointly indicted for a felony less than a capital offense, the defendants may be tried jointly or separately in the discretion of the trial court. We have frequently held that the granting of a severance is within the discretion of the trial judge and his action will not be disturbed in the absence of a clear abuse of such discretion. In *Nolan and Guthrie* v. *State,* 205 Ark. 103, 167 S. W. 2d 503, and *Bennett and Holiman* v. *State,* 201 Ark. 237, 144 S. W. 2d 476, 131 A. L. R. 908, defendants were jointly charged with arson and one of them moved for separate trial because the confession of a co-defendant would be introduced at the trial. We held there was no abuse of the trial court's discretion in denying severance where the court properly instructed the jury that the confession of one defendant could not be used against the other.

Defendants earnestly contend that their defenses were inconsistent and that the failure of the court to grant them separate trials placed the burden on each not only to defend himself against the State, but to prosecute the other. Cases are cited in which it has been held that where the defenses are so antagonistic as to preclude a defendant from obtaining a fair and impartial trial upon a joint charge, then the court abuses his discretion in failing to grant the severance. The only material difference in the defenses offered by defendants is that each claimed the other was driving the car at the time of the collision. If a conviction could only be had against the defendant actually driving the car, there might be merit in the contention advanced by defendants. As previously indicated, such is not the case under the rule we have adopted and the defense of each is not necessarily so

antagonistic to the other as to preclude a fair trial jointly. On this point the court, in *Story* v. *U. S., supra,* said: "There was no abuse of discretion by the trial court in refusing to grant a severance, requested by appellant, as the joint character of the acts of O'Connor and Story rendered a joint trial peculiarly appropriate, and a severance might have resulted in a miscarriage of justice."

In *Lucas* v. *U. S.,* 70 App. D. C. 92, 104 Fed. 2d 225, a defendant claimed that his co-defendant was hostile to him and that the Government's case was based upon the co-defendant's accusations when they were jointly charged with a felony. In upholding the trial court's denial of a severance the court said: "If the Government had been compelled to try each separately, Johnson would have placed the blame on Lucas and Lucas on Johnson, then the probable result would have been an acquittal of both. In these circumstances it was within the sound discretion of the trial court whether to grant separate trials." Under the facts and circumstances in the instant case we find no abuse of discretion in overruling the motions to sever.

3. *The Motion for Continuance.* The affidavit of Lewis supporting his motion for continuance stated that the sheriff had been unable to serve a subpoena on Hubert McVay, a Pope County resident, who was somewhere in the State of Missouri; that, if present, McVay would testify to the effect that Wren was driving the car at the time of the collision and that Lewis had been unable to ascertain McVay's whereabouts in Missouri but believed that he would be able to do so in time for him to testify at the next term of court. Upon presentation of the motion the court overruled it on the ground that the absent witness was out of the jurisdiction of the court.

After the court had overruled the motion, the prosecuting attorney stated that he would agree that McVay would testify as set out in the affidavit but would not agree as to the truthfulness of the statement. At the conclusion of the testimony on behalf of the defendants,

the court permitted the defendant Lewis to introduce two paragraphs of the affidavit in support of his motion for continuance which set out the testimony that McVay would purportedly give, if present. This occurred at 11:35 a. m. Upon reconvening at 1:30 p. m. the court changed his ruling and withdrew the statements with a strong admonition that said matter be entirely eliminated from the jury's consideration as evidence in the case. Counsel for Wren stated there was no objection to the court's action but requested a mistrial because the harm had already been done. This motion was overruled and Lewis objected to the withdrawal of the statements.

First, we hold that the court did not abuse his discretion in overruling the motion for continuance. Both the affidavit of defendant Lewis and the return of the subpoena by the Pope County sheriff showed that McVay was out of the court's jurisdiction and there was no definite showing as to defendant's ability to produce the witness at the next term of court. Under a similar state of facts in *Striplin* v. *State,* 100 Ark. 132, 139 S. W. 1128, this court held there was no abuse of judicial discretion in refusing a continuance. See, also, *Hays* v. *State,* 156 Ark. 179, 245 S. W. 309. We have also held that no abuse of discretion occurs by refusing a continuance where the testimony of the absent witness would only be cumulative. *Hazel* v. *State,* 174 Ark. 1078, 298 S. W. 357. There was testimony other than that given by Lewis tending to show that Wren was the driver of the automobile at the time of the collision.

Nor do we think that error was committed in withdrawing the purported statement of the absent witness from the consideration of the jury after it had been introduced. The only time a defendant has the right to have a statement of an absent witness read to the jury in a criminal case is where the motion for continuance is defeated solely by the State admitting the truth of the testimony which the witness would give, if present. The State declined to do this in the instant case and the trial court doubtless realized that it might have been error to

allow the jury to consider the statement as evidence without an admission of its truthfulness. If the court had permitted the jury to consider the statement as evidence without an admission of its truthfulness and the motion for continuance had been denied on that account, then error would have been committed. *Burt* v. *State,* 160 Ark. 201, 256 S. W. 361. Where the court in the first instance finds that a defendant is entitled to a continuance, it is an abuse of discretion to overrule the motion upon an agreement by the State to admit that the absent witness would testify to the facts set out in the motion, but not agreeing to admit that such facts are true. *Tiner* v. *State,* 110 Ark. 251, 161 S. W. 195.

It is clear from the record that the trial court did not deny the motion for continuance because the State would admit that the absent witness would testify to a certain state of facts, but because said witness was out of the jurisdiction of the court and there was no proper showing that he would appear at a subsequent term of court. We also hold that the admonition of the court in withdrawing the statement from the jury's consideration was sufficient to remove any prejudice that might have resulted to Wren by first admitting the statement.

4. *The Competence of Juror Pearl Gibby.* On his *voir dire* examination this juror stated that he was against liquor and its excessive use, but had no prejudice against either defendant. He also stated that he could not give a drinking defendant as fair trial as one who was not drinking and that it would take less evidence "on the innocence of a man that had not been drinking than on one that had." On further examination he stated that he did not know the defendants, had no prejudice against them and would give them a fair and impartial trial regardless of his prejudice against liquor and would be bound only by the law and evidence in reaching a verdict. The statute (Ark. Stats., § 43-1919) states that actual bias is the existence of such a state of mind on the part of the juror, in regard to the case or to either party, as satisfies the court, in the exercise of sound discretion,

that he cannot try the case impartially and without prejudice to the substantial rights of the challenging party. The entire examination shows that the juror was prejudiced against the use of alcohol, but reveals no prejudice against either defendant, or the particular case in which they were being tried, and that he would try them impartially despite his prejudice against liquor. The trial court has a wide discretion in excusing jurors for cause and his discretion will not be disturbed unless it can be shown that it has been abused. Under a similar situation in *Eddy* v. *State,* 165 Ark. 289, 264 S. W. 832, this court held that no abuse of discretion had been shown and that the trial court correctly held the juror qualified. The Juror Gibby had not formed or expressed any opinion as to the guilt of the defendants as was true in the cases relied on by the defendants. We find no error in the court's refusal to excuse him for cause.

5. *The Number of Challenges.* The court allowed eight peremptory challenges for both defendants and they contend that each was entitled to that number. The statute (Ark. Stats., § 43-1922) states that, "the defendant" is entitled to eight peremptory challenges in felony cases less than capital. It is further provided in Ark. Stats., § 43-1929: "When several defendants are tried together, the challenge of any one of the defendants shall be the challenge of all." Although this statute was not mentioned in *Hearne* v. *State,* 121 Ark. 460, 181 S. W. 291, the court held that the law only allowed defendants tried jointly in a felony prosecution the number of peremptory challenges to which each would be entitled on a separate trial. The defendants are critical of this holding which is contrary to the rule followed in many jurisdictions, but we think § 43-1929, *supra,* removes all doubt as to its applicability in this state.

6. *Sufficiency of the Evidence.* We have already related a substantial part of the proof offered by the State to support the charges against the defendants. Defendants point to certain inconsistencies in the testimony of some of the witnesses for the State. Defendant

Lewis insists that the testimony undisputedly shows that he did not have any knowledge that the car was being operated recklessly, while defendant Wren contends that the proof shows conclusively that Lewis was actually driving the car at the time of the collision. It was the province of the jury to resolve the inconsistencies in the testimony and adjudge the credibility of the witnesses. The testimony as to the non-driver's knowledge of the driver's recklessness and incapacity to properly operate the car was in our opinion sufficient to take the case to the jury. The evidence as a whole was sufficient to sustain the convictions. See *Campbell* v. *State,* 215 Ark. 785, 223 S. W. 2d 505.

Affirmed.