Opinion delivered January 24, 1949.

*Ross Robley* and *Elmer Schoggen,* for appellant.

*Barber, Henry & Thurman,* for appellee.

GRIFFIN SMITH, Chief Justice. All but five of more than a hundred Southern Cotton Oil Company employees observed their C. I. O. union strike order, and as an incident to enforcement of their demands established picket lines.[1] Disturbances characterized by violence occurred December 26, 1945—tenth day of the strike. At that time Walter Campbell, one of the strikers, clashed with Otha Williams, and Campbell was killed. Williams was one of the five Company men who remained at work. He spent 17 days in a hospital recuperating from wounds inflicted by Campbell.[2]

January 3, 1946, a temporary injunction was granted at the Company's request, restraining ten named respondents as individuals and some of the officers of

---

[1] The labor organization was Local No. 98, Food, Tobacco, Agricultural and Allied Workers Union of America, C. I. O.

[2] Criminal proceedings under Act 193 of 1943 were prosecuted against three of the strikers. See *Cole, Jones, and Bean* v. *State,* 210 Ark. 433, 196 S. W. 2d 582; same, 211 Ark. 836, 202 S. W. 2d 770; *certiorari* to U. S. Supreme Court, reversed, 333 U. S. 196, 68 S. Ct. 514; *Cole and Jones* v. *State, ante* p. 387, 216 S. W. 2d 402.

the Union from engaging in the course of conduct it was alleged they had pursued. Picketing in any form was prohibited. Hearings were had May 28, 1946, on a motion to make the January order permanent. Briefs were submitted. January 20, 1948—more than twenty months after oral arguments—the injunction was made permanent.[3]

The question before us on appeal from the January 1948 order is not whether picketing *per se* may be prohibited, but whether the decree's broad scope in respect of activities and time extends it to rights protected by the fundamental law.

At the hearing in May 1946 evidence of turbulent conduct over a protracted period seemingly convinced the Chancellor that even if violence were not condoned by Union officials, their control over membership did not afford to the Oil Company the immunity to person and property guaranteed by the law of the land, hence it would be better to halt picketing entirely when there was a showing that, presumptively, it would not be conducted in a peaceful manner. *Nann* v. *Raimist,* 174 N. E. 690, 255 N. Y. 307, 73 A. L. R. 669, cited with approval by this Court in *Riggs* v. *Tucker Duck & Rubber Co.,* 196 Ark. 571, 119 S. W. 2d 507. If acts of violence occur with systematic sequence, it is probable they will continue. *Local Union No. 858, Hotel & Restaurant Employees Int'l Alliance* v. *Jiannas,* 211 Ark. 352, 200 S. W. 2d 763.

---

[3] As abstracted by appellee, officers and members of the Union were prohibited, "while on, adjacent to, or near the plaintiff's premises at the foot of East Ninth Street in Little Rock, from interfering with plaintiff's business, customers, or employees, and from picketing or patrolling or causing to be picketed or patrolled, the plaintiff's premises, and the sidewalk or streets or other property adjacent to the plaintiff's premises, with placards or banners designating the said place of business as unfair to organized labor, or with placards otherwise so worded as to give said place such designation, and the defendants . . . and all other persons acting in concert with them . . . are restrained . . . from accosting, detaining, or causing to be accosted or detained . . . any person . . . seeking to enter plaintiff's place of business, for the purpose of persuading them from working for the plaintiff, or from calling their attention to any alleged unfairness of the plaintiff, or its place of business, to organized labor, or from otherwise trying to influence such employees or others from entering the services of or entering upon the plaintiff's place of business, and from threatening, intimidating, or assaulting any of the officers, agents, or employees of the plaintiff."

Under these decisions, and many others of similar application, the Court was justified in making the temporary order in January 1946. Allegations of the petition were sufficient, and a $5,000 bond was required. There is nothing in the Fourteenth Amendment to the Federal Constitution preventing a State, if it chooses, from placing confidence in a Chancellor's decree; nor does it compel the public to rely exclusively on a policeman's club. See *Milk Wagon Drivers Union of Chicago, Local 753, et al.*, v. *Meadowmoore Dairies, Inc.*, 312 U. S. 287, 61 S. Ct. 552, 85 L. Ed. 836, 132 A. L. R. 1200. Read Mr. Justice FRANKFURTER's comments for the Court on page 295.

Our problem is to determine whether, when more than twenty months had intervened between submission of the controversy and the order of 1948, the Chancellor was *then* justified in believing that but for the temporary injunction unlawful acts would have been committed, and whether, if restraint should be removed, violence would recur.

The absolute right to strike, and the right within reasonable limitations to picket, are protected by the State with the same impartial considerations that sustain the employer's freedom in conducting a lawful business in a legitimate manner. The difficulty occurs when overzealous proponents undertake to substitute force for orderly processes. Judicial moralizing may tend to emphasize the evil, but it does not afford a panacea. Neither does injunction, when applied in an indeterminate manner, satisfy the requirement that justice be administered in balanced form.

In the case with which we are dealing a year has passed since the temporary order was made permanent. The labor dispute resulting in the clash between Campbell and Williams reached its climactic stage nearly thirty-seven months ago.

The appellants' prayer is that the injunction be dissolved or modified. We agree to propriety of the alternative and direct modification, to permit peaceful pick-

eting, predicated upon the assumption that pledges made to the trial Court by interested respondents regarding lawful conduct will be faithfully observed.

Reversed and remanded.

Mr. Justices FRANK G. SMITH and Mr. Justice HOLT dissent.

HOLT, J., dissenting. It is my view, on the facts presented, that the decree making the temporary injunction permanent should be affirmed. I base my conclusion on our recent decision in *Local Union No. 858, etc.* v. *Jiannas,* 211 Ark. 352, 200 S. W. 2d 763, and on former decisions, *Local Union No. 313* v. *Stathakis,* 135 Ark. 86, 205 S. W. 450, 6 A. L. R. 894, and *Riggs* v. *Tucker Duck & Rubber Co.,* 196 Ark. 571, 119 S. W. 2d 507, reaffirmed in the Jiannas case.

As I read the record in the present case, the facts are even stronger in supporting the action of the trial court than were those in the Jiannas case, since here we not only have more actual threats and violence but also loss of a life directly resulting from the picketing of the strikers.

It further appears that these 117 Negro employes on the day they went on strike (December 17, 1945), through their leader, Mr. Steffey, who was present, and an official of the Union, assured appellee's attorney (also present) that the picketing "would be strictly peaceful and there wouldn't be any law violated . . . that they were going to picket and keep within the law." On that same day, the strikers organized a picket line opposite appellee's property. All but five of appellee's employes walked out. A tent was also set up near the northeast corner of appellee's premises where the striking Negro employes congregated.

Beginning with the night of the 26th, certain members of the Union and those in the picket line, threatened and attempted to coerce and intimidate persons bringing cotton seed into the plant, and certain non-striking white workers who continued to work for appellee. These threats and intimidations culminated in a fight when

the five non-striking non-union colored workers were leaving the plant at about 5:30 P. M., December 26th, when they were set upon by some fifteen of those picketing, one of whom was Louis Jones, chairman of the Union. These five employes of appellee were attacked and beaten with clubs and as a result, Walter Campbell, one of the strikers, lost his life. The employe attacked by Campbell, as a result of his injuries, was confined in a hospital for 17 days.

Thereafter, January 3, 1946, appellee asked for a temporary restraining order against appellants from further picketing appellee's premises or property adjacent thereto. On May 9th, thereafter, appellants answered appellee's petition with a general denial and alleged "that it is not true that they have in any way interfered with the business of plaintiff so as to entitle the plaintiff to the relief prayed in said complaint."

Upon a hearing May 26, 1946, wherein appellee sought to make the temporary restraining order permanent, following the testimony, the court took the matter under advisement and on January 20, 1948, entered a decree making the temporary injunction permanent.

On May 28, 1946, after the court had the case under advisement, appellants amended their answer as follows: "That neither of the defendants herein have in any way interfered with the operation of the business of the plaintiff, nor do they intend to do so. They state further that it is not their intention to violate any law of the State of Arkansas or to act in any unlawful manner whatsoever concerning the business of the plaintiff nor will they do so in the future.

"Defendants state that they will in the future exercise their right to strike and to picket so as not to interfere with the rights of others, and particularly the rights of the plaintiff herein to operate its business."

As a direct result of the unlawful acts of two of the strikers, Cole and Jones, on the same testimony on which the present decree of the trial court was based, Cole and Jones were convicted of a criminal offense (Unlawful Assemblage—Section 2-A, of Act 193 of 1943), and on ap-

peal to this court, the judgments were affirmed. In that case (*Cole and Jones* v. *State, ante,* p. 387, 216 S. W. 2d 402), we said: "It was in this encounter that a homicide occurred, so there is legally sufficient evidence that the appellants here, Cole and Jones, promoted, encouraged and aided the assemblage—which was unlawful because of its purpose and its accomplished results—and did, by the use of force and violence, attempt to prevent persons from engaging in a lawful vocation."

As has been above pointed out, appellants clearly stated when they first established their picket line and began picketing, that they were going to engage in peaceful picketing, according to law, which obviously, from the above facts, they did not do.

Now when they seek here for a modification of the permanent injunction order to permit peaceful picketing they deny that they have ever from the very beginning "in any way interfered with the operation of the business of the plaintiff (appellee) nor do they intend to do so. . . . It is not their intention to violate any law of the State of Arkansas or to act in any unlawful manner. . . . That they will in the future exercise their right to strike and to picket so as not to interfere with the right . . . of the plaintiff (appellee)."

As we said in the Jiannas case, *supra,* the clear implication is that appellants now intend to carry on their picketing just as from the beginning which they insist, and have at all times insisted, was peaceful, and if so, I think the permanent injunctive relief granted appellee was justified as the picketing which they have practiced and intend to continue, was not peaceful.

In the Jiannas case, we said: "It is recognized, and this court has expressly decided, that the laborers have the right to organize into unions for the purpose of bargaining collectively for the betterment of their condition and, as an incident thereto, to strike collectively. *Meier* v. *Speer,* 96 Ark. 618, 132 S. W. 988, 32 L. R. A., N. S. 792. They have the right to say for whom and upon what terms they will work, and may act through their unions in the decision of these questions, provided, of course,

no contracts of employment are broken. And when they fail, acting thus collectively, to agree with any employer and have gone upon a strike, they have the right to apprise the public of that fact and to solicit the support, not only of members of the union, but of the public generally in any legitimate attempt to prevail in their controversy. Against the law as thus stated there appears to be no dissent. On the other hand, it is equally as well settled and as uniformly held by the courts that the labor unions have no right to resort to force, intimidation or coercion. Publicity as well as other means of persuasion may be used; but force, coercion and intimidation may not be used. . . .

"We reaffirm and reiterate our holding that the right to strike is one of which the employee may not be deprived, and he may solicit support by any lawful means he chooses to employ, but in the recent case of *Smith and Brown* v. *State,* 207 Ark. 104, 179 S. W. 2d 185, we said: ' . . . but even picketing when accompanied by force, violence, intimidation or coercion cannot find any protection under the constitutional guaranties of freedom of speech and freedom of the press.' . . .

"Reference is made in the brief of counsel for appellants to a motion in which the court was asked to dissolve the restraining order to permit peaceable picketing, but this motion was predicated upon the following allegation. 'Defendants (appellants) further state that the picketing and patrolling performed by them against the plaintiffs and the business of the plaintiffs was peaceable picketing within the laws of the State of Arkansas, and that no illegal act had been performed by them.' The implication is inescapable from the allegations of this motion, that it was the intention to continue such picketing as had been practiced, and if so it was not error to have made the injunction permanent under the justifiable belief that future picketing would likely result in the continuance of intimidation and coercion previously employed.

"In the case of *Milk Wagon Drivers Union* v. *Meadowmoor Dairies, Inc.,* 312 U. S. 287, 61 S. Ct. 552, 85 L.

Ed. 836, 132 A. L. R. 1200, an opinion of the Supreme Court of Illinois upholding a permanent injunction was affirmed. It was there said: 'We cannot say that such a finding (that the picketing should be wholly enjoined) so contradicted experience as to warrant our rejection. Nor can we say that it was written into the Fourteenth Amendment that a state through its courts cannot base protection against future coercion on an inference of the continuing threat of past misconduct. Cf. *Ethyl Gasoline Corp.* v. *United States,* 309 U. S. 436, 60 S. Ct. 618, 84 L. Ed. 852.' "

The decree should be affirmed.

Mr. Justice FRANK G. SMITH concurs in this dissent.